**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                )
WILLIAM KRUGER,                 )
                                )
            Plaintiff,          )
                                )
     v.                         )  Civ. Action No. 14-1744 (EGS)
                                )
COGENT COMMUNICATIONS, INC.,    )
                                )
            Defendant.          )
_____)

<u>**MEMORANDUM OPINION**</u>

Plaintiff William Kruger ("Mr. Kruger") brings this action against Cogent Communications, Inc. ("Cogent") alleging discrimination on the basis of religion, national origin, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Am. Compl., Docket No. 10-1. Cogent moves to dismiss, Def.'s Mot. Dismiss ("Def.'s Mot."), Docket No. 5, and Mr. Kruger moves for leave to file an amended complaint, Pl.'s Mot. Amend ("Pl.'s Mot."), Docket No. 10. Upon consideration of the parties' motions, the responses and replies thereto, the entire record, and the applicable law, Mr. Kruger's motion for leave to file an amended complaint is **GRANTED**, and Cogent's motion to dismiss is **DENIED**.[1] That portion

_____

[1] Cogent's motion to dismiss was filed before Mr. Kruger's motion for leave to file an amended complaint. However, Cogent's motion to dismiss did not become ripe until after Mr. Kruger had filed his motion to amend, including his proposed amended complaint.

of Cogent's motion to dismiss that is converted to a motion for summary judgment is **DENIED** without prejudice.

## I.   BACKGROUND

Mr. Kruger is a white male of Hispanic (Peruvian) origin whose last name is of German national origin. Am. Compl., ¶ 4. Mr. Kruger is also a Christian. *Id.* In 2000, Mr. Kruger was hired by Cogent as Director of Service Delivery. *Id.* Mr. Kruger alleges that despite performing well at his job and receiving frequent praise for his performance, he received less compensation and fewer bonuses than his similarly-situated coworkers of different national origins and/or religions. *Id.* ¶ 13. Mr. Kruger alleges that he was inappropriately excluded from company meetings, a choice he believes was intended to limit his visibility in the company, disparage and demean him. *Id.* ¶ 14.

For some period of time, Mr. Kruger shared an office with a co-worker. *Id.* ¶ 15. When that office was needed for a returning Vice President, Mr. Kruger was placed in a cubicle, while his co-worker, who was of a different national origin than Mr.

---

*See* April 9, 2015 Minute Order. Cogent's reply brief in support of its motion to dismiss addresses Mr. Kruger's proposed amended complaint. Def.'s Rep., Docket No. 14. Therefore, the Court will construe Cogent's motion to dismiss as a motion to dismiss Mr. Kruger's amended complaint. *See Nat'l City Mortg. Co. v. Novarro*, 220 F.R.D. 102, 106 (D.D.C. 2004) (where plaintiff is granted leave to file an amended complaint, the amended complaint supersedes the original complaint and becomes the operative complaint).

Kruger, was placed in an office. *Id.* ¶ 15. Mr. Kruger alleges that Cogent's Chief Executive Officer ("CEO"), Mr. Schaeffer, would "be polite and most often friendly at meetings or other company events to all of the other employees of the company," but would "consistently ignore Mr. Kruger and refuse[] to engage in any type of normal work-place pleasantry." *Id.* ¶ 18.

Mr. Kruger alleges that he was the only executive at Cogent who was scrutinized for his attendance by his supervisors whereas "one executive of Jewish religious beliefs . . . was allowed to play computer games at work without consequences." *Id.* ¶ 19. Mr. Kruger alleges that there were statements and references made about his German last name, and that in one work-place interaction, Mr. Schaeffer referred to Mr. Kruger as a "Nazi." *Id.* ¶ 20. In another instance, another manager told Mr. Kruger that he would not win a particular argument with Mr. Schaeffer because of Mr. Schaeffer's Jewish heritage and Mr. Kruger's German last name. *Id.* ¶ 21.

Mr. Kruger further alleges that he was consistently passed over for promotions. *Id.* ¶ 22. In particular, Mr. Kruger was denied a promotion to the position of Director of Provisioning and Carrier Services. *Id.* The individual chosen for the position was a "non-Hispanic with a non-German surname, who at the time had less experience than Mr. Kruger." *Id.* Finally, in 2010, Mr. Kruger was informed that his position was being eliminated and

that he would be terminated from Cogent. *Id.* ¶ 24. He was told that there was no comparable position in the company to which he could transfer. *Id.* ¶ 25. However, on the day he was terminated, a vacancy notice was posted for a position "seeking a person with the same skills, knowledge, and abilities as Mr. Kruger." *Id.*

Mr. Kruger's amended complaint brings four counts under Title VII: (1) national origin discrimination; (2) religious discrimination; (3) national origin discrimination creating a hostile work environment; and (4) religious discrimination creating a hostile work environment. *Id.* at 5-6. Cogent moves to dismiss Mr. Kruger's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally*, Def.'s Mot. Cogent argues that (1) Mr. Kruger failed to exhaust his administrative remedies with respect to his hostile work environment and national origin discrimination claims; (2) Mr. Kruger's claims for hostile work environment are patently deficient; and (3) Mr. Kruger's religious and national origin discrimination claims fail as a matter of law. *Id.* at 6-15.

## II.  MR. KRUGER'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) provides that leave to file an amended complaint should be "freely give[n] . . .

when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the decision to grant a motion to amend is within the district court's discretion, *Walker v. Pharm. Research & Mfrs. of Am.*, 256 F.R.D. 234, 238 (D.D.C. 2009), it is an abuse of discretion for the court to deny leave without "provid[ing] a sufficiently compelling reason." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113-14 (D.D.C. 2002). Such reasons may include "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Generally, under Rule 15(a), the non-movant bears the burden of persuasion that a motion to amend should be denied. *See Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004). A court may deny as futile a motion to amend a complaint when the plaintiff's proposed amended complaint would not survive a motion to dismiss. *Nat'l Wrestling Coaches v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004); *Robinson*, 211 F. Supp. 2d at 114.

## B. Analysis

Mr. Kruger seeks to amend his complaint to "add further factual support" to his claims for discrimination and to

withdraw two claims he had asserted in his initial complaint.[2]
Pl.'s Mot. at 1. Cogent opposes the motion, arguing that Mr.
Kruger's proposed amendment is futile as the amended complaint
would not survive a motion to dismiss. *See generally* Def.'s Mem.
Opp., Docket No. 11. Cogent does not allege undue delay, bad
faith or dilatory motive, repeated failure to cure deficiencies
by amendments previously allowed, or any undue prejudice to them
by allowing the amendment. In light of the Court's
contemporaneous determination that Mr. Kruger's amended
complaint can survive a motion to dismiss, *see infra* Section
III.C, the Court will exercise its discretion under Rule 15(a)
and grant Mr. Kruger's motion for leave to file an amended
complaint. *See Faison v. Dist. of Columbia*, No. 11-CIV-0916,
2012 WL 640040, at *1 (D.D.C. Feb. 24, 2012). Accordingly, Mr.
Kruger's motion for leave to file an amended complaint is
**GRANTED**.

### III. COGENT'S MOTION TO DISMISS

#### A. Standard of Review

##### 1. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6) "tests the legal sufficiency of a complaint."

---

[2] Mr. Kruger's initial complaint included claims for race
discrimination and hostile work environment on the basis of
race. *See* Compl., Docket No. 1.

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A
complaint must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief, in order to give
the defendant fair notice of what the . . . claim is and the
grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (internal quotations omitted). While
detailed factual allegations are not necessary, the plaintiff
must plead enough facts to "raise a right to relief above the
speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may
consider "the facts alleged in the complaint, documents attached
as exhibits or incorporated by reference in the complaint, and
matters about which the Court may take judicial notice."
*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).
The Court must construe the complaint liberally in the
plaintiff's favor and grant plaintiff the benefit of all
reasonable inferences deriving from the complaint. *Kowal v. MCI
Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1984). However,
the Court must not accept plaintiff's inferences that are
"unsupported by the facts set out in the complaint." *Id.* "[O]nly
a complaint that states a plausible claim for relief survives a
motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.*

## 2. Federal Rule of Civil Procedure 56

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  When this occurs "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Summary judgement is appropriate when the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. To survive a motion for summary judgment, however, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material fact"; instead, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd., v. Zenith*

*Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(e)).

"The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006). When a Rule 12(b)(6) motion is treated as a motion for summary judgment prior to the parties being "provided with notice or an opportunity for discovery," the parties must "have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise." *Latson v. Holder*, 82 F. Supp. 3d 377, 383 (2015)(internal citations omitted).

Because the Court considers materials outside the pleadings in addressing Cogent's motion to dismiss Mr. Kruger's hostile work environment and national origin discrimination claims for failure to exhaust administrative remedies, that portion of Cogent's motion to dismiss will be converted to a motion for summary judgment.

## B. Legal Standard Under Title VII

The two "essential elements" of a discrimination claim are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). An "adverse employment action"

is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."). *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011). Although an employment discrimination plaintiff need not plead each element of a *prima facie* case to survive a motion to dismiss, he must nevertheless "plead sufficient facts to show a plausible entitlement to relief." *Edwards v. Gray*, 7 F. Supp. 3d 111, 115 (D.D.C. 2013).

An employee states a claim for discrimination creating a hostile work environment claim where he alleges a workplace "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

Before commencing an action based on Title VII in federal court, a plaintiff must first exhaust his administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010). The lawsuit following the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71

F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811

(1996). Specifically, a plaintiff's claims "must arise from the

administrative investigation that can reasonably be expected to

follow the charge of discrimination." *Id.* (citing *Chisholm v.*

*U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

### C. Analysis of Mr. Kruger's National Origin, Religious Discrimination Claims, and Hostile Work Environment Claims

The amended complaint alleges that Cogent discriminated

against Mr. Kruger on the basis of his national origin (Hispanic

and German)[3] and religion (Christian). *See generally* Am. Compl.

Cogent argues that although the complaint alleges adverse

employment actions, no facts in the complaint suggest that these

actions were taken *because of* Mr. Kruger's national origin or

religion. Def.'s Mem. Supp., Docket No. 5-1 at 13-15.

### 1. The amended complaint states a plausible claim for national origin discrimination.

The amended complaint satisfies the pleading standard

necessary to state a claim for national origin discrimination.

Mr. Kruger alleges that, despite performing well at his job, he

was consistently denied promotions and bonuses received by

---

[3] A claim for national origin discrimination alleges discrimination on the basis of either "the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). Thus, an individual may have more than one national origin if he was born in a different country than his ancestors, or if his ancestors come from more than one country.

employees of different national origins. Am. Compl., ¶¶ 13, 22.
He alleges that statements and references were made to his
German last name, and that in one interaction, his supervisor,
Mr. Schaeffer, an individual of Jewish heritage, referred to Mr.
Kruger as a "Nazi." *Id.* ¶ 19. He alleges that he was passed over
for a promotion in favor of a less experienced individual of
non-Hispanic and non-German national origin. *Id.* ¶ 20. Finally,
he alleges that he was terminated by Cogent and that on the same
day, a vacancy announcement was posted for a person with the
same skills, knowledge and abilities that he possessed. *Id.* ¶¶
24-25.

These allegations raise a reasonable inference that Mr.
Kruger was discriminated against because of his national origin.
*See Attakora v. Dist. of Columbia*, 943 F. Supp. 2d 152, 157
(D.D.C. 2013) (denying a motion to dismiss plaintiff's national
origin discrimination claim where plaintiff alleged, among other
things, that his superior made disparaging statements about
individuals of African descent and that a non-African employee
was hired to replace the plaintiff after his termination). The
allegation that Mr. Kruger's supervisor once referred to him as
a "Nazi," a term that carries significant derogatory meaning,
pushes Mr. Kruger's claims "across the line from conceivable to
plausible." *Iqbal*, 556 U.S. at 680; *cf. Ayissi-Etoh v. Fannie
Mae*, 712 F.3d 572, 578 (D.C. Cir. 2013) (plaintiff stated a

claim for hostile work environment discrimination on the basis
of race where he alleged, among other things, a single use of a
highly offensive racial epithet). Accordingly, Cogent's motion
to dismiss Mr. Kruger's national origin discrimination claim is
**DENIED**.

### 2. The amended complaint states a plausible claim for religious discrimination.

As with his claim for national origin discrimination, Mr.
Kruger has satisfied the pleading standard with respect to his
religious discrimination claim. Mr. Kruger alleges that, despite
performing well at his job, he was consistently denied
promotions and bonuses that were received by similarly-situated
coworkers of different religions. Am. Compl. ¶ 13. Mr. Kruger
further alleges that he was the only executive scrutinized for
his attendance while other high level managers were treated more
favorably, including "one executive of Jewish religious beliefs
who was allowed to play computer games at work without
consequences." *Id.* ¶ 20. Mr. Kruger alleges that the adverse
actions taken against him, including the failure to promote,
failure to properly compensate, and his termination, occurred
because of his religion. Am. Compl. at 6.

Under the standard set forth in *Iqbal*, to survive a motion
to dismiss, Mr. Kruger's amended complaint need only "contain[]
sufficient factual matter" from which the Court can "draw the

reasonable inference" that Cogent violated Title VII by discriminating against Mr. Kruger on the basis of his religion. *See Iqbal*, 556 U.S. at 663. Based on Mr. Kruger's allegations, it is reasonable for the Court to infer that Mr. Kruger suffered adverse employment actions because he was Christain, rather than Jewish. Accordingly, Cogent's motion to dismiss Mr. Kruger's religious discrimination claim is **DENIED**.

### 3. Mr. Kruger has stated a plausible claim for hostile work environment.

Cogent argues that Mr. Kruger's hostile work environment claims are also subject to dismissal because the allegations in the amended complaint, "fall well-short of stating a claim for hostile work environment." Def.'s Mem. Supp. at 10. This argument also fails as Mr. Kruger's amended complaint states a plausible claim for hostile work environment.

In evaluating a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). In the amended complaint, Mr. Kruger alleges that Mr. Schaeffer, engaged in an intentional "public display of hostility toward Mr. Kruger." Am. Compl., ¶ 18. While Mr.

Schaeffer would acknowledge other employees with "at least an appropriately cordial greeting," he would "consistently ignore Mr. Kruger and refused to engage in any type of normal work-place pleasantry." *Id.* Mr. Kruger alleges that he was the "only executive scrutinized for his attendance by his supervisor," and that "there were statements and references made to [his] German last name." *Id.* ¶¶ 19, 20. Finally, Mr. Kruger alleges that in one interaction, Mr. Schaeffer referred to Mr. Kruger as a "Nazi." *Id.* ¶ 20. Mr. Kruger alleges Cogent created this hostile work environment because of Mr. Kruger's national origin and religion. *Id.* at 6.

These allegations are sufficient to survive a motion to dismiss. The Court notes that the allegation that Cogent's CEO once referred to Mr. Kruger as a "Nazi" may be severe enough in itself to state a hostile work environment claim. *See Ayissi-Etoh*, 712 F.3d at 579 (Kavanuagh, J., concurring)("The test set forth by the Supreme Court is whether the alleged conduct is 'sufficiently severe *or* pervasive' – written in the disjunctive – not whether the conduct is 'sufficiently severe *and* pervasive.' A single, sufficiently severe incident, then, may suffice to create a hostile work environment."). But Mr. Kruger alleges more. Here, Mr. Kruger's allegations that there were references to his German last name, that he was the only executive scrutinized for his attendance, and that his

supervisor refused to engage in work place pleasantries add further strength to his hostile work environment claims. Accordingly, Cogent's motion to dismiss Mr. Kruger's hostile work environment claims is **DENIED**.

### 4. There are issues of fact as to whether Mr. Kruger exhausted his hostile work environment and national origin discrimination claims.

Cogent argues that Mr. Kruger failed to administratively exhaust his hostile work environment and national origin discrimination claims because he failed to raise these claims in his charge before the EEOC. Def.'s Mem. Supp. at 6-10. Specifically, Cogent argues that there are "no factual allegations presented in the Charge that would put the EEOC on notice of any harassment, hostile work environment and/or national origin discrimination (on the basis of Plaintiff's German last name), and give rise to an investigation of those claims." *Id.* at 7.

Cogent attaches to its motion to dismiss a one-page EEOC Form 5, entitled "Charge of Discrimination," dated November 7, 2011, and a two-page EEOC Form 161, entitled "Dismissal and Notice of Rights," dated July 18, 2014. Def.'s Exs. A, B. Relying on *Ndondji v. Interpark, Inc.*, 768 F. Supp. 2d 264, 272 (D.D.C. 2001), Cogent asserts that the Court may consider Mr. Kruger's EEOC Charge in evaluating Cogent's motion to dismiss

because it is a "public document of which a court may take judicial notice." Def.'s Mem. Supp. at 4 n.5.

Mr. Kruger responds that he properly exhausted these claims because the facts giving rise to these claims are "meticulously outlined in his EEOC intake questionnaire." Pl.'s Mem. Opp., Docket No. 13 at 11. Mr. Kruger attaches to his opposition to the motion the dismiss the same EEOC Form 5, pages two through four of an EEOC Intake Questionnaire dated February 13, 2011, and ten additional pages responding to specific questions on the Intake Questionnaire, that appear to have been submitted as attachments to the Intake Questionnaire. *See* Pl.'s Ex. 1. Mr. Kruger's EEOC Form 5 reads as follows:

> I began working as Director of Service Delivery, NA by the above employer in October 30, 2000.
>
> During my employment I was consistently passed over for promotions, e.g., Director of Provisioning and Carrier Services. I also did not receive bonuses as other employees did. I was the only executive excluded from attending annual sales meetings outside of local events. I was moved from an office to a cubicle, while my officemate was moved to another office. I was also the only executive scrutinized for attendance by my supervisor, Mr. Lee Livingston and Mr. Dave Schaeffer, CEO, Founder/Owner. On or about October 13, 2010, I returned to work from sick leave. The same day, I was discharged and not considered for promotion to Senior Director by Mr. Schaeffer. To the best of my knowledge an American employee was promoted.
>
> I believe I have been discriminated against because of my Race (White), National origin (Hispanic), and Religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def.'s Ex. A at 1. On the form, Mr. Kruger checked the boxes for Race, religion, and national origin discrimination. *Id.* There is no box for "hostile work environment." *Id.*

On the Intake Questionnaire, Mr. Kruger alleges, among other things, that "persistent statements and references were made to [his] German last name", that he was subject to "[r]umors related to [his] race, religion, and last name," and "[m]ulti slurs that I refuse to mention[]," that Cogent's CEO "created an environment of discriminatory practice," and that Cogent generally allowed for a "business culture that was supported by derogatory remarks." *Id.* at 6, 10, 15. Mr. Kruger further attaches a sworn declaration by his attorney indicating that the documents submitted as Plaintiff's Exhibit 1 were received in response to a Freedom of Information Act ("FOIA") request submitted by Mr. Kruger's attorney with the EEOC. Pl.'s Ex. 2. Mr. Kruger's attorney represents that the FOIA request "only requested materials from the files for Mr. Kruger" and that "all of the pages in Exhibit 1 were situated together, and in the exact same order as submitted here." *Id.* at 3.

Because the Court relies on these materials in addressing Cogent's argument that Mr. Kruger failed to exhaust his administrative remedies with respect to his hostile work environment and national origin discrimination claims, the Court will convert Cogent's motion to dismiss as a motion for summary

judgment for purposes of addressing this argument. Mr. Kruger refers to his EEOC charge in his amended complaint, *see* Am. Compl. ¶ 30, and thus the Court considers the charge incorporated by reference. "[D]ocuments that are referenced in, or are an integral part of the complaint are deemed not 'outside the pleadings.'" *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 179 n. 20 (D.D.C. 2012)(citing Fed. R. Civ. P. 12(d)). Further, the Court can take judicial notice of Mr. Kruger's EEOC Charge as it is a public documents. *Ahuja v. Detica, Inc.*, 742 F. Supp. 2d 96, 101-02 (D.D.C. 2001)(taking judicial notice of an EEOC Complaint and Notice of Charge.) Because Mr. Kruger's attorney's declaration is "outside the pleadings," the Court will convert this portion of Cogent's motion to a motion for summary judgment. Based upon the record at this juncture, it is not clear whether the Intake Questionnaire is a public document. In any event, the Court will consider it because the Court has converted this portion of the motion to a motion for summary judgment.

The Court is satisfied that the parties "have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise." *Latson*, 82 F. Supp. 3d at 383. Cogent attached the EEOC Form 5 to its motion to dismiss. That form does not, however, tell the whole story of the proceeding before the EEOC as evidenced by the

Intake Questionnaire, which Mr. Kruger attached to his opposition. Further, Mr. Kruger's attorney has provided a declaration to provide the basis for the submission of the Intake Questionnaire. Cogent had a full opportunity to respond to this information in its reply brief.

Citing *Park v. Howard University*, Cogent argues that Mr. Kruger's complaint in this Court must be "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations," and that the allegations in Mr. Kruger's EEOC Intake Questionnaire are not part of his EEOC charge. Def.'s Rep., Docket No. 14 at 3 (citing *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1995)). Accordingly, Cogent urges the Court to look to the face of Mr. Kruger's EEOC Form 5 alone in determining whether Mr. Kruger properly exhausted his administrative remedies before the EEOC.

In *Park*, the plaintiff, arguing she had exhausted her administrative remedies before the EEOC, attempted to rely on allegations found in an intake questionnaire she had completed for the D.C. Department of Human Rights ("DCHOR") several weeks before filing her charge with the EEOC. *Park*, 71 F.3d at 908. Finding that there was "no evidence" the defendant in that case or the EEOC "ever had access to the questionnaire," the D.C. Circuit held that the plaintiff could not rely on allegations

found only in her DCHOR intake questionnaire to satisfy the exhaustion requirement. *Id.* at 908-09.

The Courts considers *Park* distinguishable from the facts alleged in this case. Here, the record indicates that the EEOC did have access to the EEOC Intake Questionnaire Mr. Kruger attaches as Exhibit 1 and that Cogent would have been made aware of information in the Questionnaire. Mr. Kruger's attorney obtained the questionnaire through a FOIA request filed with the EEOC, indicating that the questionnaire was in the EEOC's possession. Page four of the questionnaire contains a section directing the filer to "check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire." Pl.'s Ex. 1 at 5. Mr. Kruger checked 'Box 2' which states:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name** . . .

*Id.* (emphasis in original). Therefore, unlike in *Park*, where there was no evidence in the record the plaintiff's employer or the EEOC ever had access to the plaintiff's DCHOR intake questionnaire, here, the record shows that the EEOC was on notice of the allegations raised in its own questionnaire and that information provided in that questionnaire would have been

provided to Cogent as a part of the EEOC investigation.[4] In the
Intake Questionnaire, Mr. Kruger alleges that he was subjected
to rumors about his race, religion, and last name, that the CEO
created "an environment of discriminatory practice," and that
Cogent operated under a "business culture that was supported by
derogatory remarks." *See* Pl.'s Ex. 1 at 5, 10. Mr. Kruger's
claims for hostile work environment reasonably grow from these
allegations.[5]

---

[4] Cogent's reliance on *Ahuja v. Detica Inc.* is equally misplaced.
In *Ahuja*, the plaintiff attempted to rely on an intake
questionnaire submitted with the Arlington County Human Rights
Commission ("ACHRAC"), and not on an intake questionnaire filed
with the EEOC itself, as Mr. Kruger does here. *See Ahuja*, 873 F.
Supp. at 228 (D.D.C. 2012).

[5] Moreover, it is unclear whether *Park* remains good law on the
issue of what qualifies as a "charge" of discrimination before
the EEOC, following the Supreme Court's decision in *Federal
Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). In
*Holowecki*, the Supreme Court, in assessing the timeliness of
suit brought pursuant to the Age Discrimination in Employment
Act ("ADEA"), held that an EEOC Intake Questionnaire may be
deemed a charge of discrimination "if the document reasonably
can be construed to request agency action and appropriate relief
on the employee's behalf." *Id.* at 404. Indeed, following
*Holowecki*, at least one court in this district has concluded
that an EEOC Intake Questionnaire satisfies the charge
requirement for purposes of administrative exhaustion. *See
Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 91-92 (D.D.C.
2012); *but see Ahuja*, 873 F. Supp. 2d at 229-30 (finding that
the rule established in *Holowecki* is limited to determining
whether a lawsuit was timely filed, and does not allow the
plaintiff to expand the substantive scope of her lawsuit beyond
the allegations raised in the formal charge.) As neither party's
brief addresses the effect of *Holowecki* on Mr. Kruger's case,
the Court declines to reach the issue at this time.

At this stage of the proceedings, prior to any discovery in this case, the Court cannot find that there is no material fact in dispute as to whether Mr. Kruger exhausted his administrative remedy on his hostile work environment and national origin discrimination claims. For example, the relationship between the EEOC Intake Questionnaire and the EEOC Charge is unclear based on the present record. Also, the first page of the Intake Questionnaire is missing and thus the record is incomplete. Accordingly, Cogent's motion to dismiss Mr. Kruger's hostile work environment and national origin discrimination claims for failure to exhaust administrative remedies, converted to a motion for summary judgment on those claims, is **DENIED** without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Mr. Kruger's motion for leave to file an amended complaint is **GRANTED**, Cogent's motion to dismiss Mr. Kruger's claims for national origin discrimination, religious discrimination, and hostile work environment is **DENIED**, and Cogent's motion to dismiss Mr. Kruger's hostile work environment and national origin discrimination claims, converted to a motion for summary judgment, is **DENIED without prejudice**.

An appropriate order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
               **United States District Judge**
               **March 30, 2016**